[No. H000656. Sixth Dist. Mar. 2, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL RAY JOHNSON et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

1316

COUNSEL

Philip H. Cherney and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Michael Mintz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMMONS, J.*—

I

Defendants and appellants Michael Ray Johnson (Johnson) and Grant Rose White, Jr. (White) appeal their conviction pursuant to jury verdicts of burglary in the first degree. (Pen. Code, §§ 459-460, subd. 1.) Each was sentenced to the aggravated term of six years in prison plus a five-year enhancement (Pen. Code, § 667), for a total term of eleven years.

Both claim the trial court erred in denying their motion to suppress based upon the rule of *Harvey-Remers*.[1] White further claims the evidence was insufficient to support his conviction and that the court abused its discretion in sentencing him to the aggravated term.

We conclude that the judgment should be affirmed for the reasons set forth below.

FACTS

On November 23, 1984, at approximately 4:45 p.m., Police Officers Estrabao and Cornfield, in uniform and driving a marked patrol vehicle, were dispatched by radio to the vicinity of 2541 Sleepy Hollow Lane[2] on a report of a possible burglary in progress. The report stated that two Black males were climbing a fence into the backyard of a residence. They were

---

*Assigned by the Chairperson of the Judicial Council.

[1]*People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689]; *Remers* v. *Superior Court* (1970) Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11].

[2]The evidence is in conflict on this point. There is evidence that the dispatch directed the officers to the vicinity of 2532 Sleepy Hollow Lane. The conflict is of little importance.

described as 25 to 30 years old; one having a moustache and wearing a red jacket and black pants, and the other wearing a black jacket and jeans.

Upon arriving at the scene, the officers saw two Black males, later identified as defendants Johnson and White, standing about ten yards from the backyard fence of 2541 Sleepy Hollow Lane in a park or green area that runs between Sleepy Hollow Lane and Van Winkle Street. They appeared to be in their twenties. Both had moustaches. One had a beard and the other a goatee. One was wearing a red and black jogging top and jeans and the other a dark long-sleeved shirt and jean overalls.

Officer Estrabao got out of the patrol unit and said something like: "Police, halt, freeze" to the defendants. They ran, with Estrabao chasing and ordering them to stop. Cornfield drove the patrol unit to Van Winkle Street and saw defendants run up onto the front porch of a house. He saw one of them throw or drop something on the ground next to the porch. It sounded to him like coins or jewelry. Cornfield ordered defendants off the porch and onto the sidewalk. Estrabao arrived and both officers observed women's jewelry and some small change on the ground by the porch. Defendants were arrested. A woman's bracelet and two earrings were found on White's person. White said they belonged to his wife.

The officers checked the area and found, on the ground where defendants were first seen, a woman's bracelet inscribed "Doris." They also found that the residence of the Cardenas family at 2541 Sleepy Hollow Lane had been burglarized. It appeared that entry had been made through the kitchen window.

Later that evening, they went to White's home at 2540 Sleepy Hollow Lane, which is directly across the street from the burglarized premises. Mrs. White consented to a search of the home. Michael Cox was found in the rear yard. Cox told the officers that he was invited by defendants to participate in the burglary of the Cardenas residence but refused. He also said that he saw defendants enter the Cardenas home through the kitchen window and later he saw them carry a bundle of clothes to the White residence. He took the officers to the garage and showed them the bundle. The bundle contained three suits rolled up in a flower print bed sheet. He later denied making such statements.

Mr. and Mrs. Cardenas and their daughter, Doris, lived at 2541 Sleepy Hollow Lane. Doris came home at approximately 7 p.m. on November 23, 1984, and found police officers there and the home burglarized. The jewelry, suits, and bed sheet all belonged to the Cardenas family.

Discussion

## II.

Defendants claim that the trial court erred in rejecting their claim that they were detained and arrested without probable cause being shown pursuant to the *Harvey-Remers* rule in that the testimony of the police dispatcher who made the radio transmission relied upon for probable cause was not produced by the People.

The line of cases represented by *People* v. *Harvey, supra,* 156 Cal.App.2d 516, and *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971], holds that: "[A]lthough an officer may make an arrest based on information received through 'official channels,' the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony." (*Madden, supra,* at p. 1021; accord *People* v. *Rogers* (1978) 21 Cal.3d 542, 547 [146 Cal.Rptr. 732, 579 P.2d 1048]; *Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666-667.)

" '[I]f the detaining officer himself does not have personal knowledge of facts justifying the detention, but acts solely on the basis of information or direction given him through police channels, the prosecution must establish in court . . . evidence showing that the officer who originally furnished the information had probable cause to believe that the suspect had committed a felony . . . .' [Citations.]" (*People* v. *Collin* (1973) 35 Cal.App.3d 416, 420 [110 Cal.Rptr. 869].)

The purpose of the rule is to ensure that " 'the source of the information is something other than the imagination of an officer who does not become a witness.' [Citations.]" (*Remers, supra,* 2 Cal.3d at p. 666.) "As the *Remers* case itself says, the conduct of the officers on the scene is beyond criticism. They obviously have to act on the basis of what they are told by the dispatcher or their superiors. The whole point of the *Remers* rule is to negate the possibility that the facts which validate the conduct of the officers in the field are made up inside of the police department by somebody who is trying to frame a person whom he wants investigated. [¶] The best way of negating 'do it yourself probable cause' is to have the officer who received the information from outside the police department testify, but that is not the only way." (*People* v. *Orozco* (1981) 114 Cal.App.3d 435, 444 [170 Cal.Rptr. 604].)

In *Orozco,* an anonymous caller had reported that people were shooting out of a car. "The [P]eople never proved that such a call was made but they did prove that there were cartridges within four to five feet of the passenger door to the car when the police looked for them. That these cartridges were

found was testified to by officers who were subject to cross-examination. The presence of the cartridges certainly supports a very strong inference that the police did not make up the information from the informant. Thus, the veracity of the dispatcher's statement that he received a call was circumstantially proved." (*Id.* at pp. 444-445.)

In the case at bar, the information transmitted by the police dispatcher was corroborated by what the officers observed at the scene, making it virtually impossible for the information to have been made up in the police department. The officers at the scene were thoroughly cross-examined and the court obviously believed that they, in fact, had received the dispatch as they said they did and found the evidence as they described. The officers' observations corroborated the broadcast information in that (1) the defendants were Black males of approximately the same age of and dressed nearly identically to the suspects described in the radio broadcast; and (2) they were observed standing in the park, 10 yards from the rear fence of the burglarized home at 2541 Sleepy Hollow Lane and in the immediate vicinity of the area where the officers were directed by the dispatcher.

The court, in *People* v. *Wright* (1977) 72 Cal.App.3d 328 [140 Cal.Rptr. 98], cited by defendants, failed to consider the theory first expressed in *Orozco, supra,* 114 Cal.App.3d 435, that the dispatcher or the person providing the probable cause need not testify if other evidence is presented circumstantially proving that the police did not make up the information. The facts of *Wright* are very similar to those of *Orozco* which was decided over three years later. We consider the reasoning of *Orozco* to be superior to that of *Wright*.

It is not imperative in the instant case for the dispatcher to testify as to how he or she received the information transmitted and, under the rationale of *Orozco*, the lower court did not violate the *Harvey-Remers* rule in relying on circumstantial evidence proving that the information transmitted to the officers must have come from some source outside the police department.

The information received by the officers, coupled with their corroborating observations of the defendants near the scene of the reported burglary, constituted specific and articulable facts sufficient to raise a reasonable suspicion. (See *People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].) The officers were thus justified in seeking to detain defendants. Defendants' flight under such suspicious circumstances implied a consciousness of guilt. (Cf. *id.* at p. 479.) In addition to the foregoing factors, that one of the defendants threw women's jewelry to the ground while being pursued and that women's jewelry was found on defendant White's person, clearly established probable cause to arrest defendants.

### III., IV.*

. . . . . . . . . . . . . . . . . . . .

### V.

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied March 19, 1987, and appellants' petition for review by the Supreme Court was denied May 14, 1987. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 1315.