624 So.2d 507 (1993)
Ex parte Antonio BARNETTE.
(In re Antonio Barnette v. State of Alabama).
1920421.
Supreme Court of Alabama.
April 23, 1993.
William R. King and C. Clay Torbert III of Capell, Howard, Knabe & Cobbs, P.A., Montgomery, for petitioner.
James H. Evans, Atty. Gen., and Cecil G. Brendle, Jr., Asst. Atty. Gen., for respondent.
HOUSTON, Justice.
Antonio Barnette was arrested for possession of cocaine. He moved to suppress the evidence against him, alleging that his stop by the police was improper because, he argued, a "reasonable suspicion" of criminal activity could not be based on what he termed an "uncorroborated anonymous tip." The trial court denied his motion to suppress. He was convicted. The Court of Criminal Appeals affirmed, without opinion. 614 So.2d 1063. Barnette petitioned for a writ of certiorari, citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), as authority for his claim that "the stop violated the Constitution and the motion to suppress should have been granted," because "the anonymous tip ... lacked significant details that could be independently corroborated by police to provide `sufficient indicia of reliability to justify the investigatory stop.'" Quoting the language of White, 496 U.S. at 332, 110 S.Ct. at 2417.
We issued the writ to determine whether, under the "totality of the circumstances," the anonymous tip had been sufficiently corroborated by independent police investigation to establish the requisite indicia of reliability that would provide reasonable suspicion that Barnette was involved in criminal activity and thereby justify the investigatory stop. We hold that it had not been.
On February 1, 1991, the Montgomery police received an anonymous telephone call indicating that two young black males were selling drugs. The caller described only the clothing worn by the black males (one wearing a brown jacket, blue jeans, and a black hat; the other wearing black "warmup" pants with a red stripe, a black jacket, and a black hat) and their location (the corner of Southlawn and Greensboro Road in Montgomery). The police received no information about the informant. Thereafter, two police officers were dispatched to the area with only *508 the aforementioned information. Upon their arrival, the police did not see two black males in the vicinity but rather saw three black malesBarnette and two others. None of the black males was dressed as described in the dispatch. In fact, the police testified that Barnette was wearing a black jacket, black jeans, and a blue hat. In addition, Barnette was riding a bicycle some distance down the block from the two other black males, a fact that was not mentioned in either the anonymous call or in the dispatch.
According to the police, they had intended to do a "ride-by" to look for any suspicious-looking person in the area or anyone engaging in a drug transaction. However, although they did not do a "ride-by" and although they saw no evidence that the black males were selling drugs, the police nevertheless proceeded to search them. They first searched the other black males but found no weapons or drugs on either of them. They then approached Barnette, who had fallen off his bicycle; they pointed a weapon at him and instructed him to "lean against the car." One of the officers testified: "I didn't know what I had. At the time, I didn't know what, if anything, [Barnette] was wanted for. That's why I placed him on the car and did a weapons search on him because I didn't know if he was wanted and for what."
While frisking Barnette, the police felt something in the crotch of his pants that they said they knew was not a weapon but which they thought was crack cocaine. When they reached in Barnette's pants, their suspicions were confirmed and they arrested Barnette for possession of cocaine.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court, dealing with an anonymous tip in the probable cause context, abandoned the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for the "totality of the circumstances" approach in determining whether an informant's tip established probable cause. However, in abandoning the Aguilar-Spinelli "two-pronged test" for the "totality of the circumstances" test, the Court retained the critical factors of an informant's veracity, reliability, and basis of knowledge as factors to be considered in assessing the value of the information.
In Alabama v. White, supra, the Court held that just as veracity, reliability, and basis of knowledge are relevant in the probable cause context, "these [critical] factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet [the reasonable suspicion] standard." 496 U.S. at 325, 110 S.Ct. at 2412. Because the veracity of the person giving the anonymous tip is "by hypothesis largely unknown, and unknowable," Illinois v. Gates, 462 U.S. at 237, 103 S.Ct. at 2331, and because ordinary citizens do not generally provide extensive recitations of the basis of their everyday observations, an anonymous tip, without more, seldom demonstrates an informant's reliability or the basis of the informant's knowledge. Nonetheless, an anonymous tip can provide the reasonable suspicion necessary for an investigatory stop, if the tip is sufficiently corroborated by independent police investigation. See Alabama v. White.
"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factorsquantity and qualityare considered in the `totality of the circumstancesthe whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion.... The same approach [that applies in the probable cause context if a tip has a relatively low degree of reliability, i.e., requiring more information to establish the requisite quantum of suspicion than would be required if the tip were more reliable, such as taking into *509 account the facts known to the officers from personal observation and giving the anonymous tip the weight of reliability as established through independent police work] applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established."
Alabama v. White, 496 U.S. at 330-31, 110 S.Ct. at 2416-17. (Citations omitted.)
The anonymous tip in this case contained merely a range of details relating to easily obtained facts and conditions existing at the time of the tip, i.e., that two black males dressed in a particular manner were at a specific location. Anyone could have predicted the location of the black males, their race, and a general description of their clothes, because that was a condition presumably existing at the time of the call. However, the anonymous tip did not contain facts which are ordinarily not easily predicted but which would have demonstrated a familiarity with Barnette's affairs that the general public would not have had, i.e., Barnette's future behavior. See Alabama v. White, supra. In addition, when the officers stopped Barnette, they had not corroborated the tip by independent investigation sufficient to furnish reasonable suspicion that Barnette was engaged in criminal activity.
Therefore, under the "totality of the circumstances" in this case, we hold that because the anonymous tip was not corroborated by independent police investigation, it was insufficient to exhibit indicia of reliability that would justify the investigatory stop of Barnette. Therefore, we reverse the judgment and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
Once again this Court is called upon to apply the law of anonymous tips, and once again this Court has failed to apply the law of reasonable searches and seizures, but instead has applied a "laboratory analysis" to the facts surrounding the search, a process criticized in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[1]
The Court of Criminal Appeals correctly applied the law relating to anonymous tips set forth in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), in which the Supreme Court, although admitting that the White case was "close," nevertheless, established what I believe has become the rule of law to be applied when dealing with investigatory stops based, in part, upon an anonymous tip.
I realize that Barnette argues that the facts in Alabama v. White are distinguishable from the facts in this case, and clearly there are some differences in the facts, but I believe that the Court of Criminal Appeals correctly determined that the rule of law set forth in White is controlling.
As the United States Supreme Court pointed out in White, 496 U.S. at 326, 110 S.Ct. at 2413, "[u]nder Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), an informant's tip may carry sufficient `indicia of reliability' to justify a Terry stop even though it may be insufficient to support an arrest or search warrant."
The majority sets out verbatim the "reasonable suspicion" test established in Alabama v. White, but then proceeds to apply a standard similar to the one that the United States Supreme Court, in Illinois v. Gates, criticized as being a "laboratory analysis" of the facts that was too technical.[2] The majority *510 says that "[t]he anonymous tip in this case contained merely a range of details relating to easily obtained facts and conditions existing at the time of the tip, i.e., that two black males dressed in a particular manner were at a specific location." 624 So.2d at 509. The majority then says what it would require of a tipster: that "the anonymous tip... contain facts which are ordinarily not easily predicted but which would have demonstrated a familiarity with Barnette's affairs that the general public would not have had, i.e., Barnette's future behavior." 624 So.2d at 509. The majority then criticizes the police for not "corroborat[ing] the tip by independent investigation sufficient to furnish reasonable suspicion that Barnette was engaged in criminal activity." 624 So.2d at 509.
The majority holds that the tip lacks credibility because there were three black men on the corner instead of two (the majority makes no allowance for the fact that another person could have joined the two between the time of the tip and the time the police arrived at the scene). The majority also says that "[t]he police received no information about the informant." 624 So.2d at 507. The word "anonymous" means exactly thatthat the informant is not going to give much information about who he or she is, or where he or she is located, or how he or she obtained the information. The whole theory behind allowing anonymous tips in helping in crime enforcement is that the informant will be anonymous and will remain anonymous. Even under the old Aguilar and Spinelli tests, involving known informants, that is, informants the police knew and knew had given credible information in the past, the identity of the informants and a description of them was not required. The old discarded Aguilar standard did require that they have a "batting average" of supplying credible information. Those old tests have now been abolished.
I recognize that Alabama v. White does require some independent investigation and corroboration to ensure credibility of the anonymous tip, but does the "reasonable suspicion" test require the kind of corroboration and independent investigation that the majority sets out here? I think not. In fact, the requirements set out in the opinion are almost as stringent, in my judgment, as those set out in Aguilar and Spinelli, and clearly the requirements are much more stringent than the credibility requirements for making a Terry v. Ohio stop that the Court set forth in Alabama v. White.
Why do I think that the stop made of Barnette was justified? I think it was justified because under the "totality of the circumstances" test set out in Illinois v. Gates and Alabama v. White, the officers had sufficient information to justify a "reasonable suspicion," when they went to the scene and made the investigatory stop of Barnette, that Barnette was engaged in criminal activity, that is, selling illegal drugs. The totality of those circumstances was as follows: The officers were aware that the location was a popular site from which to sell drugs, because they had arrested drug dealers in the area before. The informant gave the exact location and, as stated in the majority opinion, the caller gave a description of the clothes the suspects were wearing. The majority makes a big point of the fact that the clothing Barnette was wearing did not match the description given, but the facts show that Barnette was black, that he was at the location given by the caller, that he was wearing dark pants, a jacket, and a cap, and that when the officers turned the corner in a marked police vehicle, Barnette saw them and had what the officers described as a startled expression on his face. Barnette then attempted to flee the location, a "furtive" act, and this occurred before the officers made the Terry stop. This Court, during the time it was applying the Aguilar test, recognized that a furtive act can give rise to a reasonable suspicion of criminal activity. See Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973), in which Justice Bloodworth, writing for the Court, set out several of the principles of law that authorized a Terry stop and frisk and concluded that the officers in that case had probable cause to search for illegal drugs. In Daniels, officers had stopped a vehicle and arrested the driver for a traffic violation, and at that time the police received a radio broadcast indicating that the *511 vehicle was stolen. As one officer approached the vehicle, the defendant, a passenger in the back seat, was observed tossing a Kleenex box over his shoulder onto the ledge of the back seat of the car. Based on those facts and circumstances, this Court held that there was probable cause for the officers to conduct a search of the car and seize illegal marijuana in the box that was tossed. Daniels stands for the proposition that a "furtive" movement or gesture, when considered with other facts and circumstances, can form the basis of at least a suspicion of criminal activity. I realize that the majority characterizes Barnette's bicycle ride as being of no effect, but I believe the trial judge could consider the officer's testimony about Barnette's leaving the scene as evidence of a "furtive" act that could, along with the evidence of Barnette's startled look when he saw the marked police vehicle, form the basis for holding that the officers had sufficient information to authorize an investigatory stop. Cf. Fields v. State, 582 So.2d 596 (Ala.Cr.App.1991).
Based on the foregoing, I must respectfully dissent. The majority opinion, especially its references to information the police must have about an anonymous tipster and its criticism of the information in this case is troubling to me. Law enforcement agencies encourage citizens to furnish information about crime anonymously. If information furnished by citizens is so suspect that it must be corroborated as the majority suggests here, then the old stringent test is back, and, as I said in my dissent in Spann v. State, quoting the late Justice Hugo L. Black, who had dissented in Aguilar, "`With all respect to my Brethren who agree to the judgment and opinion of the Court, I am constrained to say that I believe the decision here is a gross and wholly indefensible miscarriage of justice.'" Whiteley v. Warden, 401 U.S. 560, 570, 91 S.Ct. 1031, 1038, 28 L.Ed.2d 306 (1971) (Black, J., dissenting), as quoted in Spann v. State, 494 So.2d 719, 722 (Ala.1986) (Maddox, J., dissenting).
STEAGALL, J., concurs.
NOTES
[1] In Spann v. State, 494 So.2d 719 (Ala.1986), this Court affirmed a decision of the Court of Criminal Appeals that had excluded evidence obtained as a result of an anonymous tip. I dissented, the basis of my dissent being grounded on my belief that, in Illinois v. Gates, the Supreme Court of the United States had abandoned the strict requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and had adopted a less stringent "reasonable suspicion" test based on a "totality of the circumstances." See Spann, 494 So.2d at 722-23 (Maddox, J., dissenting).
[2] It should be remembered that Illinois v. Gates involved a search and seizure based on an anonymous tip and that the Court was determining whether there was "probable cause" to search, not "reasonable suspicion" to conduct an investigatory stop.