[No. D021646. Fourth Dist., Div. One. Jan. 26, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR HERNANDEZ RAMIREZ, Defendant and Appellant.

## COUNSEL

Sharon L. Rhodes, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Niki Cox Shaffer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HUFFMAN, J.—In *Alabama* v. *White* (1990) 496 U.S. 325, 331 [110 L.Ed.2d 301, 309-310, 110 S.Ct. 2412], the Supreme Court set forth general standards for reviewing investigative detentions made by the police based on the totality of the circumstances, including information provided by an anonymous tip. Such a tip can support a lawful detention where the information provided is "sufficiently corroborated to furnish [the requisite] reasonable suspicion." (*Ibid.*) In this case we apply this standard to analyze the amount of corroboration required to make the tip sufficiently reliable to permit a reasonably trained police officer to act upon it in conducting an investigative detention.

Salvador Hernandez Ramirez appeals a judgment convicting him of possessing a controlled substance for sale (Health & Saf. Code, § 11378) following the denial of his motion to suppress evidence (Pen. Code,[1] § 1538.5). He contends the trial court erred in denying his suppression motion because the officers did not have reasonable suspicion to detain him, and all evidence seized after the unlawful detention must be suppressed as the direct product of the detention. As we shall explain, we conclude the information provided by the anonymous tip was sufficiently corroborated under the totality of these circumstances to provide reasonable suspicion he was engaged in criminal activity. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 1994, at 11:48 a.m., San Diego Police Officer Bret Righthouse responded to a radio dispatch to investigate narcotics activity at 1300 25th Street in Golden Hill Park. Officer Righthouse and his partner were informed an anonymous person had reported three Hispanic males in a two-door blue Buick, California license plate No. 1MBK445, were dealing narcotics from their vehicle on the east side of the park. Within five minutes of receiving the dispatch, the officers arrived at the designated location and found a car containing three Hispanic males matching precisely the information received from the anonymous informant. As the officers approached this vehicle on foot, they saw the occupants engaged in conversation with the windows open. Officer Righthouse testified at Ramirez's

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

preliminary hearing that when he walked up to the car, he saw a beer can which he believed was on the ground outside of the passenger's door, as well as another possibly inside the vehicle on the floorboard.

Based on Officer Righthouse's professional experience, the nature of the call and his knowledge that the Golden Hill Park area was a very "proliferate" area for narcotics, he knew there was a nexus between people dealing narcotics and simultaneously possessing weapons. Consequently, he requested the occupants to step out of the car. The officers then patted them down for weapons. Ramirez, who was a passenger in the rear seat, held a jean jacket in his hand as he got out of the car. Officer Righthouse requested he place it on the back of the car for safety purposes. After patting Ramirez down for weapons, Officer Righthouse asked him if he had any contraband or drugs on his person or in his jacket. After Ramirez said no, Officer Righthouse asked him for consent to search his jacket and person for drugs. Ramirez agreed. Officer Righthouse then discovered a small black plastic object marked "battery pack" in Ramirez's left jacket pocket and asked if it belonged to him. Ramirez admitted it did, explaining it was for his remote control car. Upon hearing a rattling sound inside it, Officer Righthouse asked Ramirez if he could open it. Again, Ramirez consented. Officer Righthouse then discovered 10 small plastic bindles, confirmed to contain very large pieces of rock methamphetamine packaged for sale, inside the battery area of the plastic pack. After Officer Righthouse admonished Ramirez of his constitutional rights, Ramirez explained he had obtained the methamphetamine prepackaged in the battery pack from a friend of a friend in a bar, he was going to sell the drugs for $50 a bindle, and the explanation of the storage box belonging to his remote control car was a story he had been told to use if he were stopped by the police for dealing narcotics.

After being arrested and charged with possession of a controlled substance for sale and simple possession, Ramirez brought a suppression motion at his preliminary hearing on the ground the officers illegally detained him because they did not have reasonable suspicion he had committed or was about to commit a crime. (§ 1538.5.) The motion was denied. On April 8, 1994, an information charging Ramirez with the two crimes was filed. On May 5, he renewed his suppression motion. In argument, the deputy district attorney pointed out the officer's knowledge of the area where the car was located as a narcotics-prone area was significant, and suggested that if the tip had mentioned an area where drug dealing was unknown to police, the tip would have been weaker. The trial court denied the motion on May 27. On June 3, Ramirez pled guilty to possession of a controlled substance for sale, and the second count was dismissed. On July 29, the court suspended imposition of sentence and imposed supervised probation for three years on a variety of

terms and conditions, including fourteen days in county jail. Ramirez appeals the judgment.

## DISCUSSION

Where the facts bearing on the legality of a challenged detention are undisputed, an appellate court is confronted with a question of law; we must independently determine whether the factual record supports the trial court's and the magistrate's conclusions this detention met the constitutional standard of reasonableness. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240]; *In re Eskiel S.* (1993) 15 Cal.App.4th 1638, 1641 [19 Cal.Rptr.2d 455]; *People* v. *Gallant* (1990) 225 Cal.App.3d 200, 206 [275 Cal.Rptr. 50]; *People* v. *Verin* (1990) 220 Cal.App.3d 551, 555 [269 Cal.Rptr. 573].) We first set forth the standards that have been developed for evaluating investigative detentions in the circumstances of an anonymous tip, and then apply them to these facts.

### I

#### *Reasonable Suspicion to Detain*

"In order to justify a detention 'the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and same involvement by the person in question.'" (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 478, quoting *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) Where, however, an investigative stop or detention is "predicated on circumstances which, when viewed objectively, support a mere curiosity, rumor, or hunch," the stop is unlawful even though the officer may have been acting in good faith. (*People* v. *Conway* (1994) 25 Cal.App.4th 385, 389 [30 Cal.Rptr.2d 533].)[2]

In discussing the difficulty courts have had in defining the standard for reviewing investigative detentions made by the police, the Supreme Court in

---

[2]As a threshold matter, we first note Ramirez and his companions were already stopped when the police officers arrived. Thus, no detention had yet occurred when the police officers arrived at the scene and observed the car in the position as predicted by the anonymous tip. Clearly, the officers had the right to approach the parked vehicle in order to contact the occupants, and the detention occurred when the officers requested the occupants of the car to step out so they could pat them down for weapons. This was a valid request as the officers

*United States* v. *Cortez* (1981) 449 U.S. 411, 417-418 [66 L.Ed.2d 621, 628-629, 101 S.Ct. 690], said: "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. [Citations.]"

■    An anonymous tip can support a lawful detention where the information provided is "sufficiently corroborated to furnish [the requisite] reasonable suspicion that [the suspect] was engaged in criminal activity . . . ." (*Alabama* v. *White, supra,* 496 U.S. at p. 331 [110 L.Ed.2d at p. 309].) Like probable cause, reasonable suspicion "is dependent upon both the content of information possessed by police and its degree of reliability. Both factors— quantity and quality—are considered in the 'totality of the circumstances— the whole picture,' [citation], that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." (*Id.* at p. 330 [110 L.Ed.2d at p. 309].) In performing this calculus, the Supreme Court declined to hold that "an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* [v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], investigative] stop." (*Alabama* v. *White, supra,* 496 U.S. at p. 329 [110 L.Ed.2d at p. 308].) Evidently, each case must be examined on its own facts to establish whether a challenged detention was objectively reasonable.

It is therefore instructive to examine the facts in *Alabama* v. *White.* The Alabama police received an anonymous tip indicating White would be leaving a particular apartment in a particular car and would be headed towards a specific motel, carrying a brown attaché case containing cocaine. The police went to the scene and observed a person leaving the approximate area in the vehicle described. However, she was carrying nothing in her hands when she entered the station wagon. The officers followed her for a while and concluded she was driving in the direction of the motel identified in the anonymous tip. Police then stopped the vehicle short of the motel and conducted a consensual search which produced narcotics. While noting it

could reasonably have feared for their safety and were allowed to make sure the three men that they were contacting were not armed. (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330].)

was "a close case" (*Alabama* v. *White, supra*, 496 U.S. at p. 332 [110 L.Ed.2d at p. 310]), the Supreme Court found the tip was sufficiently corroborated to furnish a reasonable suspicion White was engaged in criminal activity and thus the investigative stop did not violate the Fourth Amendment (*id.* at p. 331 [110 L.Ed.2d at pp. 309-310]).

In reaching its conclusions, the high court discussed earlier detention and anonymous tip cases. In *Adams* v. *Williams* (1972) 407 U.S. 143 [32 L.Ed.2d 612, 92 S.Ct. 1921], the Supreme Court sustained a stop and frisk on the basis of a tip given to the police by a known informant who had provided information in the past. The court concluded that the unverified tip was sufficient to support the arrest, but did not address the situation of an anonymous tip.

Later, in 1983, the Supreme Court in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317] dealt with an anonymous tip which was used as the basis of probable cause for a search warrant. The court in *Illinois* v. *Gates* upheld the use of anonymous tips with sufficient corroboration by the police where the totality of the circumstances permits a magistrate to find the informant's information sufficiently reliable to support probable cause. The opinion in *Alabama* v. *White* applies the reasoning of *Illinois* v. *Gates* to the stop-and-frisk environment. Hence, *Alabama* v. *White* does not constitute a restriction upon police power. To conclude its analysis, the court remarked: "*We think it also important that, as in Gates*, 'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' [Citation.] The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have 'predicted' that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. [Citation.] When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." (*Alabama* v. *White, supra*, 496 U.S. at p. 332 [110 L.Ed.2d at p. 310], first italics added.)

We do not read this concluding language to create a separate requirement in *Alabama* v. *White*, that to be reliable, an anonymous informant must supply predictions of a suspect's future behavior; rather, if the informant does supply such information, which can then be verified, that circumstance supports the reliability of the informant's information. Since it cannot be said, however, that an anonymous informant could never supply reasonable suspicion to detain a suspect (496 U.S. at p. 329 [110 L.Ed.2d at p. 308]), we must assume that even information supplied by an anonymous informant whose reliability is unknown can be factored into the reasonable suspicion determination, subject to some degree of corroboration. We next address the issue of sufficiency of the corroboration under these circumstances.

II

*Application of Rules*

Under the totality of these circumstances, what amount of corroboration of an anonymous tip must a police officer obtain before deciding, in light of his or her training and experience, to make an investigative detention to resolve under the ambiguous circumstances presented whether there is ongoing criminal activity? We first review the types of corroboration that may be obtained, then discuss the facts presented in light of applicable law.

A

*Corroboration*

■ The purpose of requiring corroboration of an anonymous tip is to ensure that there are probative indications of criminal activity along the lines suggested by the informant. (*People* v. *Johnson* (1991) 231 Cal.App.3d 1, 12 [282 Cal.Rptr. 114].)[3] Corroboration of an anonymous tip can take several forms. For example, " '[e]ven observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity

---

[3]In *People* v. *Johnson*, *supra*, 231 Cal.App.3d 1, the anonymous tip reported someone was selling or doing drugs in the hallway of a specific building. When the officers arrived at that building, they found the defendant strangely crouched over in a corner, peering down at them and saying nothing. The Court of Appeal held the officers had reasonable suspicion to detain Johnson. Acknowledging the tip there was less detailed than that in *Alabama* v. *White*, the court noted it must have been given by someone who had just been in the hallway of what the officers found to be a small, three-unit apartment building. The court reasoned the tip involving someone hanging out in the hallway concerned a more unusual activity than the mundane departure of a woman in *Alabama* v. *White*, giving it more reliability. Moreover, since the officers promptly responded to the report and saw the man in the hallway, not coming or going but crouched over in the corner, those observations of the dark hallway and the defendant's odd position and mute demeanor reasonably suggested to the officers,

in a suspicious light. . . .' " (*Ibid.*, citing *People* v. *Johnson* (1990) 220 Cal.App.3d 742, 749 [270 Cal.Rptr. 70], disapproved on other grounds in *People* v. *Camarella* (1991) 54 Cal.3d 592, 606, fn. 6 [286 Cal.Rptr. 780, 818 P.2d 63]; see *Illinois* v. *Gates, supra,* 462 U.S. at pp. 243-244 [76 L.Ed.2d at pp. 551-552].) Similarly, "[w]hile a person cannot be detained for mere presence in a high crime area without more [citations], this setting is a factor that can lend meaning to the person's behavior. [Citations.]" (*People* v. *Limon* (1993) 17 Cal.App.4th 524, 532 [21 Cal.Rptr.2d 397].) Other forms of corroboration include the verification of detail provided by the informant through the officer's observations. Some information is so detailed as to be self-verifying, and in some cases verification from other sources can be achieved. (*People* v. *Johnson, supra,* 220 Cal.App.3d at p. 749.)

In *Alabama* v. *White,* the Supreme Court noted that not every detail mentioned by the tipster was verified, such as the name of the person leaving or the precise apartment from which she left. Although the tip provided she would be carrying the all-important attaché case including the cocaine, she was not carrying it when she emerged. Therefore, significant portions of the tip were uncorroborated until she departed and headed *in the direction* of the motel. The court, however, took into account the physical observations and the trip that followed. The nature of the corroboration provided by the police in *Alabama* v. *White,* confirmation of her future behavior (departure from the apartment and her route of travel), was significant because there was little else corroborated by the tip. The case does not, however, stand for the proposition that the future behavior predictions by the informant must be in the nature of travel or similarly drawn-out behavior, simply because those were the facts in *Alabama* v. *White.*

In a parallel factual context, several cases discuss the adequacy of various forms of corroboration of unattributed information received through police channels. In *People* v. *Orozco* (1981) 114 Cal.App.3d 435, 443-445 [170 Cal.Rptr. 604], the court discussed a challenge to a seizure based upon the source of the information leading to the officers' actions. The officers had been informed that an "anonymous informant had phoned in, reported shots being fired out of a cream, vinyl top over cream colored vehicle in [the] area of Phillips and East End. Occupants several Mexicans." When the officers arrived, they observed the vehicle in the location described, but did not observe any shooting or any weapons. However, cartridges were found near the car, supporting the information that shots were fired. (*Id.* at p. 444.) The police proceeded to order the occupants out of the vehicle at gunpoint and pat them down, resulting in a lawful search for weapons in the interior of the

---

experienced in rock cocaine arrests, that criminal activity might be afoot. (*People* v. *Johnson, supra,* 231 Cal.App.3d at pp. 11-12.)

car. Thus, the court in *Orozco* found sufficient corroboration, which is wholly consistent with the decision of the Supreme Court in *Alabama* v. *White*.

*People* v. *Orozco*, *supra*, 114 Cal.App.3d 435, was followed by the Court of Appeal in *People* v. *Johnson* (1987) 189 Cal.App.3d 1315, 1320 [235 Cal.Rptr. 62], involving detention of two described suspects after a report of a burglary in progress in the area. Again, the court relied on corroboration by police observation of the defendants at the scene to make reliable the earlier broadcast. Contrary to Ramirez's argument, *Johnson* and *Orozco* cannot properly be distinguished on the theories that they were either decided before *Alabama* v. *White* or that they really dealt with issues of the source of the radio transmission under the so-called *Harvey-Remers* rule (*People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689]; *Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 666 [87 Cal.Rptr. 202, 470 P.2d 11]). Instead, their treatment of the corroboration issue is fully applicable here.

Ramirez also seeks to distinguish *Orozco*, as involving an element of imminent danger characterizing a gun tip, as opposed to a tip of possession of drugs for sale. In *Orozco*, there is an element of imminent danger arising from the report of shots being fired; similarly, in *People* v. *Johnson*, *supra*, 189 Cal.App.3d 1315, there was a burglary in progress. However, the fact that an anonymous tip (or police dispatch) referring to shots being fired (or a crime in progress) requires corroboration does not mean that no corroboration is required for currently nonviolent crimes. In any case, the officer here testified that he knew there was a nexus between narcotics activity and weapons use. Even though narcotics dealing may not necessarily pose the same imminent risk of injury as there is in a report of shots being fired, it still qualifies as ongoing criminal activity deserving of investigation under proper circumstances. Similarly, even though, as Ramirez argues, drug dealing could alternatively be investigated via ongoing surveillance (as opposed to investigative detention), there is no reason to assume investigative detentions are improper where the potential criminal activity is drug dealing, as opposed to an already violent activity. Indeed, *Alabama* v. *White* allowed such a stop. (See also *United States* v. *Sharpe* (1985) 470 U.S. 675, 682-686 [84 L.Ed.2d 605, 613-616, 105 S.Ct. 1568].) The form of this type of intervention is of necessity an exigency because some type of crime is suspected to be afoot, requiring investigation based on reasonable suspicion. Ramirez's argument overlooks that reasonable suspicion is a less demanding standard than probable cause to arrest. (*Alabama* v. *White*, *supra*, 496 U.S. at p. 330 [110 L.Ed.2d at pp. 308-309].)

Nor should investigative stops be confined to detentions intended to preserve officer safety: while the officer's safety is a vitally important

concern, it falls within the overall goal of protecting the valid pursuit of his or her duties in ascertaining if criminal conduct is occurring. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 23-31 [20 L.Ed.2d 889, 907-911, 88 S.Ct. 1868].) Ramirez has offered no support for his theory that investigative detentions should be confined to the arena of violent crime and should not be used to investigate reported drug dealing under circumstances such as these. However, even though these were proper circumstances for an investigative detention, the question remains if there was adequate corroboration here.

B

*Evaluation of the Circumstances*

In this case, the detaining officers had several forms of corroboration of the anonymous tip. They knew (1) every physical detail given by the informant was corroborated by the officers' observations, concerning three Hispanic males in a specifically described car at a particular location; (2) the location of the detention was one of the known high-volume narcotics dealing areas of the city, and was entirely consistent with that portion of the tip suggesting narcotics dealing; (3) the activity that the men were engaged in, conversing in the car, was consistent with the information in the tip (dealing drugs from that car), even though not innately suspicious in and of itself; and (4) some exigency existed because of the report of a crime in progress. Officer Righthouse was very familiar with the area in which the car was parked, having made hundreds of drug-related contacts in that specific park area. This knowledge could properly lend significance to otherwise innocuous facts or behavior. (*People* v. *Limon*, *supra*, 17 Cal.App.4th at pp. 532-533.)

Moreover, the nature of the reported activity, drug dealing in a park, was not particularly covert and did not have the characteristics of White's or Gates's travels, i.e., being unknown to outsiders and subject to future predictions by those in the know. The reliability of the informant thus did not have to be tested or confirmed in the same way as were the informants in those cases.

Here, although the tip related that these men were dealing drugs from that car, the officer did not testify that he observed actual drug dealing.[4] Although there are many ways in which this could have been a stronger case in

---

[4]On this record, we are unable to attach too much significance to the beer cans seen by the officer as he approached the car. The record does not reveal if the cans were open. Officer Righthouse testified when he got out of his vehicle, he immediately asked the three occupants of the target vehicle to step outside to pat them down for weapons as they were under

support of the detention (e.g., if there were a greater quantity of corroborating information, such as the officers' observations of actual drug dealing, or greater quality of information, such as knowledge of the informant's reliability), under the totality of these circumstances, the officers had adequate information on which to proceed. In light of their training and experience, it was reasonable for them to make an investigative detention of Ramirez, and there was no constitutional error.

While appellate courts many months after the fact might postulate other things the police could have or should have done under these circumstances, these officers acted reasonably based upon the information given to them and their own observations. Also, the intrusion was brief and minimal, and the contraband which was later discovered was the product of a voluntary consent. The magistrate and the trial court judge each correctly interpreted the facts and the law to uphold the police officers' judgment call.

DISPOSITION

Judgment affirmed.

Nares, J., concurred.

**WORK, Acting P. J.,** Dissenting.—I respectfully disagree with the majority's conclusion this nonconsensual police detention was based on an anonymous tip sufficiently corroborated to pass constitutional muster. Even the most liberal reading of the record cannot justify this detention. Fourth Amendment privacy protections are not preserved merely by citing the legal standards by which to evaluate police conduct while ignoring the quality of the observed facts purporting to justify a detention. I point to the following shortcomings of the majority opinion.

The Fourth Amendment applies to *all* seizures of the person, including brief detentions short of arrest. (*Brown* v. *Texas* (1979) 443 U.S. 47, 50 [61 L.Ed.2d 357, 361, 99 S.Ct. 2637].) Thus, the majority's reliance on this intrusion being brief and minimal is irrelevant, as is the fact Ramirez consented to the search *after* the illegal detention occurred.

The so-called corroborative facts on which the majority relies are mischaracterized and, in any event, the officers did not purport to have relied on any

---

detention for a narcotics investigation. Thus, although the officers may have observed a potential Vehicle Code violation in plain view as they approached the car, which they would have been entitled to investigate, it is unclear what role the beer cans played in the decision to detain, or what weight they may be given in an objective evaluation of the circumstances. (Veh. Code, § 23223; *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587].) Moreover, the argument the cans justified the detention is raised by the People for the first time on appeal.

of them. The first of the four it lists, "every physical detail given by the informant" (maj. opn., *ante*, at p. 1619) was corroborated by the officer's observations (three Hispanic males were sitting in a specifically described car with its windows down in a small public area lawfully parked at approximately 11:45 a.m.) does not corroborate the informant's reliability on the question whether these persons were engaged in criminal activity or suggest the informant had any "insider" knowledge of these persons or their activities.

The second factor, that the open public park was in a known high-volume narcotics dealing area of the city, does not, of itself, supply relevant corroboration. (See *Brown* v. *Texas, supra*, 443 U.S. at p. 52 [61 L.Ed.2d at pp. 362-363]; *People* v. *Verin* (1990) 220 Cal.App.3d 551, 558 [269 Cal.Rptr. 573].) Further, the officer never suggested he relied on his knowledge of the character of the neighborhood. His testimony straightforwardly confirms he received the anonymous tip and, upon observing the car parked with its windows open at high noon in this open public park, he and his partner immediately strode to the door and ordered the occupants out. Further, the officer only testified on this point on redirect examination, as follows:

"Q. Officer, are you familiar with the area around Golden Hill Park?

"A. Yes, Ma'am. I am.

"Q. Have you had any experience with any other narcotics transactions in that area?

"A. Yes, Ma'am. I have.

"Q. On approximately how many different occasions have you dealt with narcotics transactions in that area?

"A. I would not even want to make a guess. It's a very proliferate area for narcotics, and we have made hundreds of contacts with narcotics, under the influence of narcotics, that type of thing."

In spite of the majority's representation, Officer Righthouse never said *he* had made hundreds of drug-related contacts in that specific park area. He stated *we* (presumably referring to members of the San Diego Police Department) had made hundreds of contacts. In any event, he did not refer to "within" the park, but rather responded to the prosecutor's inquiry concerning "the area around Golden Hill Park." The majority cites *People* v. *Limon* (1993) 17 Cal.App.4th 524 [21 Cal.Rptr.2d 397], for the proposition that

knowledge of the character of an area for criminal activity "could properly lend significance to otherwise innocuous facts or behavior." (Maj. opn., *ante*, at p. 11619.) I have no quarrel with that proposition, but it is inapposite here. In *Limon*, the court quite accurately noted that an officer may consider whether observed activities are consistent with hand-to-hand exchanges of money or drugs in the context of whether that activity takes place in a high crime area known for drug activity, rather than elsewhere. (*Id.* at p. 532.) Here, of course, the officers observed nothing to indicate the persons had, were, or were going to be, engaged in criminal activity. A fair reading of *Limon* exposes the shortcomings of the majority's position.

Further, the "high crime area" argument is akin to the similar argument raised during the appeal in *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 886, footnote 11 [45 L.Ed.2d 607, 619-620, 95 S.Ct. 2574], in which the court commented on the government's appellate argument that the location of its immigration traffic stop (i.e., close to the Mexican border) justified the detention of a vehicle containing three persons appearing to be of Mexican descent. The Supreme Court dismissed this as an "after-the-fact" attempt at justification. So it is on this record where Officer Righthouse quite forthrightly stated he and his partner received a radio call concerning a tip from an anonymous person, drove to the location of the vehicle, walked up to the rear of the vehicle while the occupants were engaged in a conversation with the windows down, and ordered them out of the vehicle. As he stated, none of the occupants were free to leave because "[*t*]*hey were under detention* for a narcotics investigation . . . ." (Italics added.)

The elasticity of the majority's interpretation of the evidence is evident from the third factor it cites, "the activity that the men were engaged in, *conversing in the car*, was consistent with the information in the tip (dealing drugs from that car) . . . ." (Maj. opn., *ante*, at p. 1619, italics added.) How conversing in a car lawfully parked at noon in a public park suggests drug dealing escapes me, especially since the car windows were rolled down and there were no indicia of attempts to conceal the occupants' activities.

The majority's stated "fourth" factor, "some exigency existed because of the report of a crime in progress" (maj. opn., *ante*, at p. 1619) is unavailing in this case. Indeed, the majority do not cite any fact to support a belief some exigency required detention and, of course, neither the officers nor the People advanced this theory to the trial court. To the extent the majority may be referring to cases such as *People* v. *Orozco* (1981) 114 Cal.App.3d 435 [170 Cal.Rptr. 604], involving a report of shots being fired corroborated by officers observing cartridges near the identified vehicle, for this proposition, the decision emphasizes it was the reported acts of violence plus the

observed facts which gave the officers reasonable cause to fear for their safety and to detain. (*Id.* at p. 445.)

Under the circumstances of *Orozco* and similarly fact-based cases, there exists a substantial risk that an attempt to "wait out" the suspect may have fatal consequences. No such parallel risk is evident here with this anonymous drug tip where surveillance or engagement in "controlled buys" constitutes more reasonable courses of action. (Unlike the factors relied on in *Orozco* and similar cases such as *U.S.* v. *Bold* (2d Cir. 1994) 19 F.3d 99, 102-104; *U.S.* v. *Walker* (2d Cir. 1993) 7 F.3d 26, 31; *U.S.* v. *Clipper* (D.C. Cir. 1992) 973 F.2d 944, 949-951 [297 App.D.C. 372]; see *U.S.* v. *Cox* (8th Cir. 1991) 942 F.2d 1282, 1284-1285.) To conclude any report of criminal activity, no matter how nonviolent, alone establishes exigent circumstances sufficient to satisfy a police detention would render Fourth Amendment protections meaningless. Indeed, as Justice Scalia recognized in *Arizona* v. *Hicks* (1987) 480 U.S. 321, 329 [94 L.Ed.2d 347, 357, 107 S.Ct. 1149], under some circumstances there may well be no effective means to investigate short of such an intrusion, "[b]ut there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all."

In *Alabama* v. *White* (1990) 496 U.S. 325, 329 [110 L.Ed.2d 301, 308, 110 S.Ct. 2412], the court emphasized the anonymous tip, standing alone, would not warrant a person of reasonable caution to believe a detention was appropriate. However, the court looked at the totality of the circumstances and concluded the anonymous tip had been sufficiently corroborated by additional facts obtained through the officer's personal observation furnishing a reasonable suspicion White was engaged in criminal activity. (*Ibid.*) The court noted the officers, as predicted, saw a woman get into the described vehicle and then drive along a direct route toward the predicted destination, a route which involved several turns. The court then stated ". . . the independent corroboration by the police of significant aspects of the informer's *predictions* imparted some degree of reliability to the other allegations made by the caller." (*Id.* at p. 332 [110 L.Ed.2d at p. 310], italics added.) Further, the court stressed its belief in the importance the anonymous tip included a prediction of future actions which were observed occurring. The court stated: "What was important was the caller's ability to predict respondent's *future behavior,* because it demonstrated [knowledge of] inside information—a special familiarity with respondent's affairs." (*Ibid.,* italics in original.) Even with these significant aspects of the anonymous caller's predictions being verified, the majority referred to it as a "close case" as to whether there was sufficient indicia of reliability to justify the investigatory stop. (*Ibid.*)

Here, of course, we have *no* observed facts suggesting criminal conduct or related to predicted behavior. The majority, however, ignores *Alabama* v.

*White*'s implicit holding that, but for the informant's predictive information which were borne out by the officer's observations, "[s]imply put, a tip such as this one, standing alone, would not 'warrant a man of reasonable caution in the belief' that [a stop] was appropriate." (*Alabama* v. *White, supra*, 496 U.S. at p. 329 [110 L.Ed.2d at p. 308], citing *Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868], quoting *Carroll* v. *United States* (1925) 267 U.S. 132, 162 [69 L.Ed. 543, 555, 45 S.Ct. 280, 39 A.L.R. 790].) Instead, it purports to find applicable California precedent where there is in fact none in point. The majority suggests Ramirez's (and presumably my) argument overlooks that reasonable suspicion is a less demanding standard than probable cause to arrest. It is incorrect. The case against the majority opinion rests squarely on the holding of *Alabama* v. *White* and its cited authority, and is specifically related to the reasonable suspicion standard relating to detentions.

A review of case precedent from other jurisdictions supports my reading and application of *Alabama* v. *White*. For instance in Georgia, the court of appeal held an anonymous tipster's report "some guys" were selling drugs in the "Mud Puddle," a known drug area, providing only a general description of suspected drug sellers as "young Black males" without giving any individual description of defendant or making prediction of future behavior of either defendant or the group upon which reliability could be tested, did not provide legitimate articulable reasonable suspicion warranting police officers' investigatory stop. (*State* v. *Sapp* (1994) 214 Ga.App. 428 [448 S.E.2d 3, 5].) On the other hand, in Arkansas, the Supreme Court held an anonymous tip defendant, *known to the police to have had previous drug arrests and convictions*, and another with a prior drug record were in a specific unit of a particular hotel selling drugs and using a blue van to make deliveries was sufficiently corroborated by the police to afford reasonable suspicion for an investigatory stop when defendant was seen leaving the particular hotel in the blue van. (*Johnson* v. *State* (1994) 319 Ark. 78 [889 S.W.2d 764, 765-766].)[1] Moreover, in Florida, the court of appeal held an anonymous tip a Black male with a gray beard, wearing a black cap, gray pants and a blue jacket was riding a bicycle, had a gun in one of his jacket pockets and was

---

[1]Similarly, in *U.S.* v. *Perrin* (4th Cir. 1995) 45 F.3d 869, 871-873, the reviewing court held that two anonymous telephone calls, one identifying defendant by his street name (later arrested for possessing a firearm by a felon) as selling crack cocaine from a particular apartment complex, corroborated by police observation of defendant leaving the building within an hour of the second tip, the location of the apartment complex within a high-crime area, the officers' knowledge drugs were regularly sold at that particular apartment complex, one officer's personal familiarity with the defendant and the reasonableness of the officers' belief a person suspected of dealing drugs might be carrying a weapon, provided the officers with reasonable suspicion justifying an investigatory detention. However, the court stated the fact the tip involved incidents purportedly occurring in a "high crime" area would not have been sufficient corroboration of itself. (*Id.* at p. 873.)

possibly selling drugs did *not* support an investigatory stop based on reasonable suspicion, because the tip only offered easily observable facts without any prediction of future actions and the suspect at the time of the stop was not doing anything suspicious. (*Butts* v. *State* (Fla.Dist.Ct.App. 1994) 644 So.2d 605, 606.) Similarly, the Alabama Supreme Court held an anonymous tip two Black males dressed in particular clothing were selling drugs at a specific location was not sufficient to justify investigatory stop of defendant, because the tip merely contained a range of details relating to easily obtained facts and conditions existing at the time of the tip and offered no facts not easily predictable demonstrating a familiarity with defendant's affairs, and the officers had failed to corroborate the tip with independent investigation sufficient to furnish reasonable suspicion under the totality of the circumstances. (*Ex Parte Barnette* (Ala. 1993) 624 So.2d 507, 509; accord, *Brown* v. *U.S.* (D.C.App. 1991) 590 A.2d 1008, 1023; *State* v. *Kennison* (1991) 134 N.H. 243 [590 A.2d 1099, 1102].)

Finally, any inference that my disagreement with the majority's analysis of *Alabama* v. *White*'s application to this case suggests I view the holding of *Alabama* v. *White* as restricting police power, is simply wrong. It simply defines existing law. I confess, however, I do not not read *Alabama* v. *White* as justifying police detentions *solely* upon only confirming anonymous tip details relating to easily obtained, non-suspicious-appearing facts and conditions existing at the time of the tip, such as an occupied car precisely matching the caller's description lawfully situated in a public park at high noon, facts obtainable by any passerby and having no unlawful connotation. (See *Alabama* v. *White, supra*, 496 U.S. at p. 332 [110 L.Ed.2d at p. 310].)[2]

Absent even a scintilla of a relevant corroborating fact to justify this detention, I would reverse the judgment.

Appellant's petition for review by the Supreme Court was denied April 18, 1996. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[2]The majority's reference that it is "unable to attach *too much* significance to the beer cans seen by the officer as he approached the car" is inexplicable. (Maj. opn., *ante*, at p. 1619, fn. 4, italics added.) The officer never said he saw any cans, only that he "believed there was a beer can on the ground . . . possibly," and "possibly" one on the floorboard of the car. Not only did the officer not state he, in fact, saw any can, he did not purport to rely on that factor. Thus, the majority is correct not to place "*too much* significance," on its misconstrued reading of the record.