Donald Vernon SAUL *v.* STATE of Arkansas

CA CR 90-129 803 S.W.2d 941

Court of Appeals of Arkansas
Division II
Opinion delivered February 20, 1991

*David Schoen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Paul L. Cherry*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Donald Vernon Saul was convicted of possession of drug paraphernalia and possession of marijuana. He was sentenced to ten years in the Arkansas Department of Correction for the former offense and one year in the Boone County Jail for the latter. On appeal to this court Saul raises three arguments: (1) that his conviction for possession of

marijuana must be reversed because possession of only a "trace" amount was shown; (2) that the trial court should have suppressed the evidence found in the passenger compartment of appellant's vehicle; and (3) that the court erred in finding that appellant had consented to the search of the trunk of the car. We find no error and affirm.

On January 1, 1989, Jim Trammell, a Boone County deputy sheriff, was on routine patrol. As he was driving through a rest area north of Harrison, the caretaker, Jim McNelley, waved for him to stop. McNelley reported that a man who had driven a brown Chevrolet to the rest stop had been in the rest room for two and a half hours.

Trammell ran a registration check on the license plate and received information that the tag was issued to a green Subaru. He looked into the vehicle to see if "there was something such as a registration lying in view that would disclose whose vehicle it was." He saw no registration but did see a shotgun lying in the back seat of the car. The gun was covered by a coat except for the tip of the muzzle and the end of the stock. He opened the driver's side door to retrieve the shotgun and check to see if it was loaded. Trammell testified that he did this for his own safety before he dealt with the suspect. When he opened the door he saw a large curved blade dagger. He also saw a clear plastic container in the front seat which contained "some green residue." Trammell testified that based on his training and experience he believed the green residue to be marijuana. He seized the container as contraband and the gun and the knife for his own protection, before entering the bathroom to talk with the appellant. According to Trammell's testimony, he then entered the rest room and asked the appellant how he was feeling. Saul told Trammell that he had severe diarrhea, that the shotgun was for deer hunting, that he was sharpening the knife for a friend, and that he knew nothing about the bottle with the marijuana in it. Trammell testified that Saul agreed to let him search the car and took out his car keys and handed them to him. Saul's testimony was that the search was conducted without his consent and that he had left the keys in the vehicle. The search of the trunk of the car turned up several items of drug paraphernalia.

■ Appellant contends that the possession of merely a

trace amount of a controlled substance will not support a conviction, citing *Harbison* v. *State*, 302 Ark. 315, 790 S.W.2d 146 (1990). The state argues that the issue is waived because the appellant did not move for a directed verdict at the close of all the evidence, citing Ark. R. Crim. P. 36.21(b) and *White* v. *State*, 302 Ark. 515, 790 S.W.2d 896 (1990). In *Moore* v. *State*, 304 Ark. 257, 801 S.W.2d 638 (1990), the supreme court held that even if a general motion for a directed verdict is made, the *Harbison* issue is waived unless specifically raised. We therefore need not reach the merits of the argument.

 When the state claims that a search is justified by consent, it has the burden of proving that the consent was freely and voluntarily given and that there was no actual or implied duress or coercion. *Scroggins* v. *State*, 268 Ark. 261, 595 S.W.2d 219 (1980). In reviewing a trial court's ruling in this regard, we make an independent determination based on the totality of the circumstances, but reverse only if the ruling was clearly against the preponderance of the evidence. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988). In the case at bar the testimony of the officer and that of the appellant were in direct conflict. In such circumstances we have said that the decision amounts simply to the question of which witness to believe, a decision which is left to the trier of fact. *See Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988); *Johnson* v. *State*, 27 Ark. App. 54, 766 S.W.2d 25 (1989). While it is true, as appellant points out, that the caretaker's testimony contradicted the officer's as to some details, when all the circumstances are considered together, we cannot say the trial court's finding that Trammell's testimony was more credible is clearly against the preponderance of the evidence.

Finally, appellant argues that the officer's warrantless entry into the passenger compartment of the vehicle requires suppression of the evidence obtained as a result. We cannot agree. Appellant correctly notes that any warrantless search of a vehicle is presumptively unconstitutional and that the burden is on the state' to show legal justification for it. *Leopold* v. *State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). Appellant attempts to distinguish this case from *Michigan* v. *Long*, 463 U.S. 1032 (1983) and *Terry* v. *Ohio*, 392 U.S. 1 (1968). He notes the following language in *Michigan* v. *Long*:

[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049, citing *Terry* v. *Ohio*, 392 U.S. 21.

Appellant argues that the officer had no reason to believe that the appellant was dangerous and refers us to Trammell's admission that, at the time he entered the vehicle to retrieve the shotgun, he had no reason to feel that he was in danger.

It is clear one has a lesser expectation of privacy in a motor vehicle. *New York* v. *Class*, 475 U.S. 106 (1986); *Cardwell* v. *Lewis*, 417 U.S. 583 (1974). When the safety of the officer is the proposed justification for the intrusion on privacy, that consideration is both legitimate and weighty. *Pennsylvania* v. *Mimms*, 434 U.S. 106 (1977). It is unreasonable to require police officers to take unnecessary risks in the performance of their duties. *Terry* v. *Ohio*, 392 U.S. 1 (1968). The protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger. *Michigan* v. *Long*, 463 U.S. 1032 (1983). The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27. The touchstone of the analysis is the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. *Pennsylvania* v. *Mimms*, 434 U.S. at 108 (citing *Terry*, 392 U.S. at 19). In *Michigan* v. *Long*, the Court said:

In this case, the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile. Therefore, the balancing required by Terry clearly weighs in favor of allowing the police to conduct an area search in the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the

suspect is potentially dangerous.

463 U.S. at 1051.

In the case at bar it is true that appellant did not have immediate access to the shotgun at the time the officer entered the vehicle to retrieve it. However, in *Michigan* v. *Long*, where there were two officers on the scene, the Supreme Court rejected the Michigan Supreme Court's view that it "was not reasonable for the officers to fear that [respondent] could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile. *Long*, 463 U.S. at 1062 (Brennan, J., dissenting). As the majority noted, "[t]he circumstances of this case clearly justified [the officers] in their reasonable belief that Long posed a danger if he were permitted to reenter his vehicle."

In this case the police officer testified that he entered the vehicle to seize the shotgun "for my safety before I dealt with Mr. Saul." The entry into the vehicle for this limited purpose does not seem unreasonable in view of the likelihood that Mr. Saul would be asked to return to the vehicle and enter it to retrieve whatever registration papers he might have. This is not a case of a search for possible weapons, but rather a seizure of a deadly weapon in plain view. The danger, while perhaps not immediate, was clearly imminent.

In *New York* v. *Class*, 475 U.S. 106 (1986), the Supreme Court upheld as constitutional the entry of police officers into a vehicle for the purpose of attempting to locate a vehicle identification number. There the Court said, "there is no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails," citing *Terry* v. *Ohio*, 392 U.S. at 21 (1968). The Court in *Class* listed three factors it considered pertinent: (1) the safety of the officers was served by the governmental intrusions; (2) the intrusion was minimal; and (3) the search stemmed from some probable cause focusing suspicion on the individual affected by the search. In upholding the search the Court said:

> Any other conclusion would expose police officers to potentially grave risks without significantly reducing the intrusiveness of the ultimate conduct — viewing the VIN

— which, as we have said, the officers were entitled to do as part of an undoubtedly justified traffic stop.

*Class*, 475 U.S. at 119.

If the intrusion in *Class* was constitutionally permissible, where no deadly weapon was in plain view and there was no reason to suspect the car was stolen or that the appellant himself was dangerous, we cannot reach a contrary conclusion here.

Our conclusion is that no reversible error was committed.

Affirmed.

CRACRAFT, C.J., and ROGERS, J., agree.