Paul FRETTE *v.* STATE of Arkansas

CA CR 96-477                                                947 S.W.2d 15

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 18, 1997

*Kenneth Osborne*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Paul Frette was charged with violating Ark. Code Ann. § 27-23-113 (Supp. 1993), which prohibits a person from operating or being in physical control of a commercial motor vehicle while having alcohol in his system. His pretrial motion to suppress evidence obtained as a result of his arrest was denied. Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, he entered a conditional guilty plea to the charge, reserving the right to appeal the denial of his motion to suppress. He was fined $250.00, plus costs, and his driver's license was suspended for 120 days. Our review of the record requires us to conclude that his motion to suppress should have been granted; therefore, we reverse to permit appellant to withdraw his guilty plea as provided for in Rule 24.3(b).

Appellant was arrested on June 15, 1995, based on information provided by a tip called in to the dispatch office of the Springdale Police Department by a person identifying himself as Jerry Smith, a truck driver from Jonesboro, Georgia. Smith reported that he had seen an older man drinking beer while seated behind the wheel in the cab of a red tractor-trailer that was parked in a commercial truck parking lot behind the McDonald's restaurant. Based solely upon the information provided by the dispatch office, an officer was sent to the location to investigate and found appellant seated in the driver's position in the parked truck. The officer approached the driver's side of the truck and ordered appellant to get out. When appellant exited his vehicle, the officer noted an odor of intoxicants and observed appellant's poor balance. The officer ordered appellant to perform field sobriety tests. When appellant failed all of the officer's field sobriety tests, he was placed under arrest and transported to the Springdale Police Department for booking where he made incriminatory statements and regis-

tered .08 on a breathalyzer test. Appellant contends that prior to the stop, the officer observed nothing that would indicate wrongful activity on appellant's part and that the trial court erred in denying his motion to suppress because the arresting officer lacked reasonable suspicion to stop him. The trial court found that appellant was lawfully stopped and detained and denied appellant's motion to suppress evidence as a result of the stop.

Arkansas Rule of Criminal Procedure 3.1 provides that a law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony, or misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. "Reasonable suspicion" is defined under Rule 2.1 as "suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion."

█ Justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *United States v. Cortez*, 449 U.S. 411 (1981); *Terry v. Ohio*, 392 U.S. 1 (1967); *Johnson v. State*, 319 Ark. 78, 889 S.W.2d 764 (1994); *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied* 459 U.S. 882 (1982). The reliability of an informant reporting possible criminal activity may be shown by police observations that tend to corroborate the information provided. *Alabama v. White*, 496 U.S. 325 (1990); *Bliss v. State*, 33 Ark. App. 121, 802 S.W.2d 479 (1991). However, an accurate description of a particular vehicle, standing alone, does not establish an informant's reliability, *see Kaiser v. State*, 296 Ark. 125, 752 S.W.2d 271 (1988), and the mere fact that a caller identifies himself in no way establishes his trustworthiness, *see Evans v. State*, 33 Ark. App. 184, 804 S.W.2d 730 (1991).

The informant in the present case was a person unknown to and unseen by law enforcement officers, who had not previously provided information to them, and was not otherwise established to be reliable. *Cf. Adams v. Williams,* 407 U.S. 143, 146-47 (1972) (informant known to police officer personally provided information to officer that was immediately verifiable at the scene; ". . .informant might have been subject to immediate arrest for making a false complaint had [police officer's] investigation proved the tip incorrect"); *Brooks v. State,* 40 Ark. App. 208, 212, 845 S.W.2d 530 (1993) (citizen informant, not previously known to police officer, came forward and personally provided to officer information ". . .relating criminal activity that he had observed [and] supplied the officer with the description of the vehicle, its occupants and its license number"; prior to stop of vehicle, police officer verified informant's description of vehicle, its license number, and number of occupants). Here, the information given by the informant was limited to a description of a vehicle, its location, and that it was occupied by an elderly man seen drinking.

■ ■ In reviewing a trial court's denial of a motion to suppress evidence, we make an independent determination based on the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Phillips v. State,* 53 Ark. App. 36, 918 S.W.2d 721 (1996). We hold that appellant's motion to suppress should have been granted. *Kaiser v. State; supra; Evans v. State, supra.* This does not mean that police must verify the reliability of an informant before conducting an investigation based on the information provided by the informant, as the information may be a "catapult to launch" an investigation. *Nottingham v. State,* 29 Ark. App. 95, 778 S.W.2d 629 (1989). Upon police investigation and independent verification of the information provided, reasonable suspicion may be established. *Id.* However, conspicuously absent from the case before us is any police investigation or reasonable suspicion before the officer made an investigatory seizure.

The State argues that the officer acted under the authority of Ark. R. Crim. P. 2.2 which permits a law enforcement officer to request a person to furnish information in investigation of a crime; and that there was not a "seizure" by the officer approaching the

vehicle to question appellant. The State relies on *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990), in which the Arkansas Supreme Court found that it was not a seizure under the Fourth Amendment for a police officer to approach a car parked in a public place to determine whether there was anything wrong. However, the court in *Thompson* held that there was not a seizure, noting that there was no evidence that the officer restrained the defendant's liberty by means of physical force or a show of authority, as the officer did not order the defendant out of his vehicle until after the officer noticed an odor of alcohol and had reasonable suspicion. The present case, however, is distinguishable from *Thompson* because here the officer ordered appellant out of his truck before making any investigation or establishing reasonable suspicion. Only after appellant stepped from his truck did the officer first smell intoxicants and observe poor balance sufficient to have reasonable suspicion.

Whether a person has been seized within the meaning of the Fourth Amendment depends on whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Phillips v. State, supra.* A "seizure" occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Thompson v. State, supra; Cf. Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997). We conclude that a "seizure" occurred in this case by the officer ordering appellant to step from his vehicle, so that this was an investigatory stop under Rule 3.1, and not a Rule 2.2 request for information. *Thompson v. State, supra; see Phillips v. State, supra; accord Popple v. State*, 626 So.2d 185, 187 (Fla. 1993) (police officer approached defendant, who was seated in vehicle, in order to request information; defendant seized when officer directed defendant to exit vehicle).

The dissenting opinion maintains that this seizure of appellant was reasonable under the circumstances for reasons having to do with officer safety. This analysis is flawed for two reasons. In the first place, the informant did not provide any information to the Springdale Police Department that would give rise to a reasonable suspicion that the appellant was armed with a weapon of some sort or was otherwise presently dangerous to the officer. *Cf.*

*Adams*, 407 U.S. at 145 (informant told police officer that suspect "had a gun at his waist"). It is true, as the dissenting opinion points out, that when the officer initially approached appellant, he was seated in the cab of an eighteen-wheel tractor-trailer truck. According to the dissenting opinion, this situation posed a danger to the officer's safety and, therefore, provided the legal basis for the officer's seizure of appellant by ordering him to get out of the cab of the tractor-trailer truck. This is the second flaw in the dissent's analysis — it is applicable in every "officer approaches car" case. Every time a police officer approaches an individual seated on the driver's side of a parked vehicle of any size, the officer can always truthfully state that he was concerned for his safety in that the individual could try to run over him or could produce a firearm or other weapon from the interior of the passenger compartment of the vehicle. Police officers can order the driver of a vehicle and any passengers to exit the vehicle; however, a police officer may do so only after having validly stopped the vehicle. *See Maryland v. Wilson*, 117 S.Ct. 882 (1997).

■ Appellant finally contends that the facts to which he stipulated and the facts recited by the prosecuting attorney were insufficient to support the charge against him and that the trial court erred in accepting his guilty plea. We do not address these issues as they are not properly before this court. When one pleads guilty pursuant to Rule 24.3(b), the only claim cognizable on direct appeal is a challenge to the denial of a pretrial motion to suppress illegally obtained evidence. *See Scalco v. City of Russellville*, 318 Ark. 65, 883 S.W.2d 813 (1994); *Jenkins v. State*, 301 Ark. 586, 786 S.W.2d 566 (1990); *Fullerton v. State*, 47 Ark. App. 141, 886 S.W.2d 887 (1994).

Reversed and remanded.

AREY, ROGERS, and STROUD, JJ., agree.

CRABTREE and MEADS, JJ., dissent.

TERRY CRABTREE, Judge, dissenting. I cannot agree with the majority opinion that this case should be reversed. At trial, the appellant alleged that his stop and detention were illegal, and therefore, the items observed by the officer and the subsequent test

administered by the officer should be suppressed. The items he asked to suppress were "statements of the Defendant, blood alcohol analysis, physical description of the Defendant on the date of his arrest, statements of an informant, descriptions of field sobriety tests, and a physical of the Defendant. . . ." The majority opinion rejects the State's argument that the officer was entitled to make inquiry pursuant to Ark. R. Crim. P. 2.2 and instead finds that there was a seizure of the person pursuant to Rule 3.1. On the facts of this case, I believe this to be an incorrect determination.

On June 15, 1995, Jerry Smith telephoned the Springdale Police Department and informed them that he was a truck driver from Jonesboro, Georgia. Smith told the police that there was an older male in a red tractor trailer who was drinking beer in the cab of his truck in the parking lot at McDonald's. Based on this information, and without making independent observations of appellant, Officer Kawano went to the door of appellant's cab and ordered him out. When the appellant got out of his truck, the officer smelled intoxicants and noticed that appellant had certain mannerisms and poor balance. These observations caused the officer to have appellant undergo field sobriety tests, which appellant failed. Officer Kawano placed appellant under arrest and took him to the police station for booking. Appellant indicated that he had consumed alcoholic beverages before getting in his truck.

First, this is not the typical case in which an informant is working for the police and obtains information. The informant, Jerry Smith, identified himself by name, address, and occupation. Surely, a concerned citizen is entitled to some credibility in a situation such as this one. There was not any indication in the record that Smith had a grudge against the appellant or had any reason to falsify his report to the police officers. Accordingly, it does not appear that this case falls into the category of anonymous tips.

Second, I cannot agree with the majority that this case involved a detention of the person without probable cause or reasonable suspicion. The officer had obtained information that was verified when he arrived at the location described by Smith. It was entirely reasonable for the officer to make inquiry of the driver of the truck as to his status. Rule 2.2 is more applicable to

this case than Rule 3.1 in that the officer, for his own safety, had to ask the driver of the truck to step down. Otherwise, the officer would be put in considerable danger merely because of his relative position to the driver in an eighteen-wheel tractor-trailer truck. Once the driver stepped to the ground, the officer immediately smelled an odor of intoxicants and noticed certain other indicia of intoxication leading ultimately to the arrest of the defendant. Officers' safety has long been recognized as a reason to make minor intrusions into the sanctity of personal privacy. *Saul v. State*, 33 Ark. App. 160, 163, 803 S.W.2d 941, 944 (1991). ("When the safety of the officer is the proposed justification for the intrusion on privacy, that consideration is both legitimate and weighty.") However, in this case, the expectation of privacy was diminished considerably because the appellant was on a public parking lot and in a commercial vehicle. Asking the driver to step down from his vehicle was a very minor intrusion when considered against the interest of the State in preventing the death of others because of drunk driving. In *Thompson v. State*, 303 Ark. 407, 797 S.W. 2d 450 (1990), the court stated:

> In his motion to suppress and here on appeal, the appellant contends that Officer Parsons' approaching his parked car constituted a seizure or detention and that this seizure was unlawful under the fourth amendment because the officer had no reason to suspect that the appellant had committed or was about to commit a crime. The appellant's argument is contrary to established fourth amendment law. Because this court has never addressed this argument, we take this opportunity to clarify the law in this area.
>
> Not all personal intercourse between policemen and citizens involves "seizures" of persons under the fourth amendment. *See Terry v. Ohio*, 392 U.S. 1 (1967). A "seizure" occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.*
>
> Police-citizen encounters have been classified into three categories. *See U.S. v. Hernandez*, 854 F.2d 295 (8th Cir. 1988). The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within

the meaning of the fourth amendment. *Id.* The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Id.* The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id.*

Here, Officer Parsons' approach to investigate the appellant's car parked in a public place fits into the first category, and thus is not a "seizure" within the meaning of the fourth amendment. *See W. LaFave, Search & Seizure,* § 9.2(h), at 408-09 (1987); *see also* cases cited therein *Atchley v. State,* 393 So.2d 1034 (Ala. Crim. App. 1981) (court held there was no seizure under the fourth amendment where the police, having no knowledge of any criminal activity in the area, approached a car legally parked with its lights off after midnight and asked the driver if there was any problem and for some identification); *State v. Harlan,* 301 N.W.2d 717 (Iowa 1981) (court held there was no seizure, where a police officer stopped behind and approached the defendant's parked car and observed that the defendant had bloodshot eyes and smelled of alcohol. Although the officer had no reports of crime in the area, had not seen the defendant commit any crimes, or suspected him of committing any specific crime, the officer felt the defendant was trying to evade him earlier when the officer had passed his car); and *State v. Vohnoutka,* 292 N.W.2d 756 (Minn. 1980) (court held no stop or seizure where officers saw driver of a motor vehicle shut off the car's lights and drive into a parking lot of a closed service station and approached the car and asked the defendant if anything was wrong and subsequently discovered marijuana in the car)."

*Id.* at 408-10, 797 S.W.2d at 451-52.

Similarly, I am of the opinion that this case falls in the first category and the officer was justified in requesting cooperation under Rule 2.2. For the foregoing reasons, I dissent.

MEADS, J., joins in this dissent.