

# NUMBER 13-21-00080-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                              Appellant,

v.

JUSTIN SIRUCEK,                                                 Appellee.

## On appeal from the 94th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellant the State of Texas appeals the trial court's order granting appellee Justin Sirucek's motion to suppress evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) ("The state is entitled to appeal an order of a court in a criminal case if the order . . . grants a motion to suppress evidence."). We reverse and remand for further proceedings.

## I.  BACKGROUND

On March 13, 2020, Port Aransas police officer Brandon Reidel and Port Lavaca police officer Eric Salles were patrolling the Port Aransas Beach during spring break festivities. At some point in the late afternoon, the officers were approached by a "female subject"[1] who informed them that an "older man with a beard" had given her friend "Molly,"[2] and that her friend was "tripping."[3] The woman stated that the man was in a blue Suburban parked on the beach. The officers searched but were unable to locate the vehicle, so they returned "back to the large crow[d]" of beachgoers.

Moments later, the same woman reapproached the officers, noting that she was mistaken—the Suburban was red, not blue. The woman pointed the officers to the relevant red Suburban, stating that it was the vehicle from which the man had sold her friend the drugs. The officers proceeded to approach the vehicle and found a man matching the woman's description sleeping in the back of the Suburban. The officers woke the man up, requested that he exit the vehicle, and requested his identification. The man provided his California identification card and driver's license, listing him as Sirucek.

According to video evidence, the officers briefly questioned Sirucek regarding his presence at a spring break event. Sirucek indicated he was there for the "same reason as everybody else: spring break." The officers asked Sirucek for his age, and he

---

[1] The parties refer to the woman as either "an unidentified female" or the "anonymous tipster."

[2] "Molly" is "the popular nickname" for 3,4-methylenedioxy-methamphetamine (MDMA), "a synthetic drug that alters mood and perception." NAT'L INST. ON DRUG ABUSE, *MDMA (Ecstasy/Molly) DrugFacts*, https://www.drugabuse.gov/publications/drugfacts/mdma-ecstasymolly (last visited Dec. 27, 2021).

[3] Salles stated in his police report that "'tripping' is a common term for someone who has lost their mental and physical faculties as a result of narcotic usage."

responded that he is forty-two years old. The officers asked Sirucek if he was in college, and he answered that he was not. The officers informed Sirucek that they had received a complaint that he was selling drugs out of his vehicle, and asked Sirucek if the claim was legitimate. After a seven-second pause, Sirucek responded that he did not know what the officers were talking about. The officers ran a warrant check on Sirucek, which came back clear.

While maintaining possession of Sirucek's identification cards, Officer Reidel requested Sirucek's consent to search the Suburban, which Sirucek denied. Officer Reidel then informed Sirucek that a K9 unit would be dispatched to conduct a search. Approximately three minutes later, Officer Matthew Johnson with the Port Aransas Police Department and his "K9 partner, Riggs," arrived and began an "open-air sniff" search. Led by Officer Johnson, K9 Riggs sniffed around Sirucek's Suburban and, per Officer Johnson, "gave a noticeable change of behavior and a final alert on the driver[']s door" to the presence of narcotics. Thereafter, the officers searched the inside of Sirucek's vehicle, ultimately discovering "88 grams of MDMA, and 81 Units of LSD[4]." Sirucek was arrested and charged with (1) manufacture or delivery of substance in Penalty Group 1-A and (2) manufacture or delivery of substance in Penalty Group 2 or 2-A, both first degree felonies. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.113(d), 481.1121(b)(3).

On February 2, 2021, Sirucek filed a "Motion to Suppress Illegally Seized Evidence," arguing that the narcotics were "seized as the result of an illegal traffic stop,

---

[4] LSD, or D-lysergic acid diethylamide, is a "common classic hallucinogen"; a type of drug that "alter[s] a person's awareness of their surroundings as well as their own thoughts and feelings." NAT'L INST. ON DRUG ABUSE, *Hallucinogens DrugFacts*, https://www.drugabuse.gov/publications/drugfacts/hallucinogens (last visited Dec. 27, 2021).

3

arrest, or search." Sirucek clarified his argument at the suppression motion hearings, asserting that the officers lacked reasonable suspicion based on the unidentified woman's tip to detain or continue to detain him while awaiting the arrival of Officer Johnson and K9 Riggs to conduct the open-air sniff search.

Concerned that the three-minute detention of Sirucek while awaiting the arrival of K9 Riggs violated Sirucek's Fourth Amendment rights per the United States Supreme Court's holding in *Rodriguez v. United States*, 575 U.S. 348 (2015), on March 23, 2021, the trial court granted Sirucek's motion to suppress evidence. The State requested findings of facts and conclusions of law, which the trial court filed on April 15, 2021.

The trial court found, in relevant part, that: (1) there were no "indicia of reliability in the tip" given to the police by the unidentified woman; (2) despite the clear warrant check, the officers did not return Sirucek's identification cards and surrounded Sirucek; (3) and Sirucek was not free to leave during the three-minute wait for Officer Johnson and K9 Riggs. The trial court concluded that:

1) The original contact between the police and Sirucek was a consensual encounter.

2) The initial identification of Sirucek raised no reasonable suspicion of criminal activity, nor any corroboration of the unknown tipster's allegation.

3) The police had no specific, articulable facts that, combined with rational inferences from those facts, would leave them to reasonably conclude that Sirucek was, had been, or soon would be engaged in criminal activity.

4) Therefore, once police identified Sirucek and verified he had no warrants, the reason for the contact was effectuated and there was no basis for further detention.

5) The further police actions in surrounding Sirucek, not releasing his

4

identification card and driver's license, and waiting for a canine team for approximately three minutes constitute unlawful detention unsupported by reasonable suspicion.

This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II.    DISCUSSION

The State argues that the trial court erred by granting Sirucek's motion to suppress evidence because: (1) the unidentified woman's face-to-face tip was sufficient to give police reasonable suspicion to detain Sirucek; or, alternatively, (2) Sirucek failed to show a causal connection between any purported illegal detention and the K9 drug search.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *see Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89. Accordingly, we review de novo whether a certain set of historical facts gives rise to reasonable suspicion. *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013); *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (holding that the legal question of whether the totality of circumstances is sufficient to support an officer's reasonable suspicion is reviewed de novo). When the trial court makes explicit findings of fact, we consider, in the light most

favorable to the trial court's ruling, whether the record supports those findings. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

**B.    Applicable Law**

The law recognizes three distinct types of police-citizen interactions: "(1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests . . . [which] are reasonable only if supported by probable cause*.*" *Wade*, 422 S.W.3d at 667. This case centers on the second type of interaction: investigative detentions.

Under the Fourth Amendment, a warrantless investigative detention of a person must be justified by reasonable suspicion. *See id.*; *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler*, 348 S.W.3d at 914. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making [a] stop." *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, (2000)).

"In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's

6

subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*; *see also Derichsweiler*, 348 S.W.3d at 914.

Reasonable suspicion depends not only on the content of information received by law enforcement, but on the reliability of the information. *See Matthews*, 431 S.W.3d at 603. Consequently, an anonymous tip alone concerning criminal activity "is seldom sufficient to establish reasonable suspicion." *Id.* However, "under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). "An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (citing *White*, 496 U.S. at 330).

To determine the reasonableness of an investigatory detention, courts must consider not only "whether the officer's action was justified at its inception," but also "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). "Reasonable suspicion is not a carte blanche for a prolonged detention and investigation." *Matthews*, 431 S.W.3d at 603. A detention supported by reasonable suspicion may last no longer than is necessary to effectuate the purpose of the stop. *Rodriguez*, 575 U.S. at 354;

7

*Florida v. Royer*, 460 U.S. 491, 500 (1983). "The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions [of criminal activity] quickly." *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (en banc); *see Matthews*, 431 S.W.3d at 603. "One reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs is to have a trained drug dog perform an 'open air' search by walking around the car." *Matthews*, 431 S.W.3d at 603–04.

## C.    Analysis

By its first argument, the State contends that the trial court erred in concluding that the officers lacked reasonable suspicion to detain Sirucek because the unidentified woman's tip was supported by sufficient indicia of reliability.[5]

### 1.    The anonymous woman's tip was reliable

In *Navarette v. California*, the United States Supreme Court concluded that an anonymous 911 caller's tip was sufficiently reliable for purposes of raising reasonable suspicion to conduct a traffic stop given the caller's (1) eyewitness knowledge of the relevant event, (2) contemporaneous police report, and (3) use of the 911 system to make that report. 572 U.S. at 393. Courts in Texas have considered those and similar factors in their reasonable suspicion analyses, including: "(1) whether the informant provide[d] a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police

---

[5] The parties do not dispute that the woman is treated as anonymous under the facts in this case. In any event, when "the citizen-informant's identity is unknown, the information [s]he provided is treated as an anonymous tip" whether or not the information was presented to the police officer face-to-face. *Mitchell v. State*, 187 S.W.3d 113, 117 (Tex. App.—Waco 2006, pet. ref'd).

(e.g., a paid informant); and (4) whether the informant place[d] himself in a position to be held accountable for the report." *Nacu v. State*, 373 S.W.3d 691, 694 (Tex. App.—San Antonio 2012, no pet.) (citing *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.)).

Several courts in Texas, including this Court, have held that unsolicited information provided in a face-to-face manner by a citizen who is unconnected from law enforcement is inherently reliable, given that the informant placed herself in a position where she could have been easily identified and held accountable for her intervention. *See Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that the face-to-face informant is inherently reliable); *Nacu*, 373 S.W.3d at 694 ("The face-to-face informant is inherently more reliable than the anonymous 911–caller . . . ."); *Arizpe v. State*, 308 S.W.3d 89, 93 (Tex. App.—San Antonio 2010, no pet.) ("A person, not connected with the police, 'who gives a police officer unsolicited information in a face-to-face manner is inherently reliable.'"); *Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex. App.—Waco 2006, pet. ref'd) (Because the "informant placed himself in a position to be easily identified . . . and held accountable for his report . . . [the report] exhibits heightened indicia of reliability."); *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.) ("By approaching [the officer] face-to-face, the cab driver put himself in a position where he could have been held accountable for his intervention."); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd) ("We hold that in the present case, the informant, although unknown to the officers, was sufficiently reliable because he came forward in person to give the officers the information."); *see also*

9

*Gabrish v. State*, No. 13-07-00673-CR, 2009 WL 2605899, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2009, no pet.) (mem. op., not designated for publication) (informants' reports bore sufficient indicia of reliability given, among other things, their face-to-face contact with police").

In this case, the woman was neither known to the police officers nor a paid informant. *See Nacu*, 373 S.W.3d at 694; *Pipkin*, 114 S.W.3d at 655. The woman made a face-to-face report to the officers that her friend had been sold an illicit drug and was experiencing the effects of consuming that drug. The face-to-face report placed the woman in a position to be held responsible for her intervention should the tip have proven false. *See Fudge*, 42 S.W.3d at 230; *Mitchell*, 187 S.W.3d at 117–18; *Arizpe*, 308 S.W.3d at 93 (noting that the anonymous tipster's face-to-face tip was sufficiently reliable notwithstanding the fact that the officer failed to "take[] down the informant's name, phone number, address, and other identifying information"). While the woman initially reported the wrong Suburban color, she ultimately directed the officers to the exact vehicle in which they would find the "older man with a beard" that sold her friend the drugs. *See Navarette*, 572 U.S. at 393 (by reporting a specific vehicle for dangerous activity, the anonymous tip was entitled to greater weight); *Pipkin*, 114 S.W.3d at 655.

Moreover, the tip was corroborated. *See Martinez*, 348 S.W.3d at 923; *Matthews*, 431 S.W.3d at 604. "Corroboration does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed." *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005). "Rather, corroboration refers to whether the police officer, in light of the

10

circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *White*, 496 U.S. at 330–31; *Pipkin*, 114 S.W.3d at 654).

Regarding the corroboration of an anonymous tip, this Court's decision in *Furr v. State* is instructive. *See Furr v. State*, No. 13-14-00287-CR, 2015 WL 307757, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 22, 2015) (mem. op., not designated for publication) (*Furr I*), *aff'd*, 499 S.W.3d 872 (Tex. Crim. App. 2016) (*Furr II*). The facts in *Furr I* were summarized by the court of criminal appeals as follows:

> One Tuesday afternoon, Officer George Alvarez of the Corpus Christi Police Department responded to an anonymous tip that two white males, one in all black and one in a black shirt and carrying a brown backpack, were using drugs on a street corner. An officer who later arrived at the scene testified that the corner was located in a "high drug, high crime" area. In response to the call, Alvarez drove by the street intersection and saw two males who fit the description given by the informant. As he drove past the men in his police car, he noticed in his rearview mirror that they were watching him as he drove past. He then approached the two, but Furr avoided Alvarez and quickly walked into the nearby Mother Theresa Shelter. As he walked away, he repeatedly looked over his shoulder at Alvarez. Alvarez spoke to the other man, Collier, about the call police received. When another officer arrived, Officer Ayala, Alvarez told him that Furr walked away from him "furtive[ly], like he was trying to get away."
>
> Both officers entered the shelter to make contact with Furr. They found him in the facility's yard, where according to Ayala, he was still acting nervous, seemed anxious, was profusely sweating, appeared to be evasive, and was trying to avoid them. Ayala asked Furr if he had any weapons on him, but Furr did not initially respond. It appeared to Ayala that Furr was "kind of out of it" and "looked like he was under the influence of a drug." To protect himself and others, Ayala frisked Furr for weapons. While doing so, he felt something in Furr's right front pocket that he knew from experience was a glass crack pipe. As he removed the pipe, he also found two syringes. After seizing the contraband, Furr was arrested for possession of drug paraphernalia, and according to Ayala, he was no longer free to leave. Ayala asked if he had any identification, and Furr said that it was in his pocket. After removing the wallet and opening it, Ayala found two small balloons of what he believed to be heroin.

Furr was charged with possession of a controlled substance. *Furr II*, 499 S.W.3d at 875–76. Furr filed a motion to suppress evidence, which the trial court denied. *Id.* at 876.

On appeal, Furr argued that the anonymous tip that two white males were using drugs on a street corner did not establish reasonable suspicion. *Furr I*, 2015 WL 307757, at *1. This Court agreed that the "tip in this case was utterly anonymous and made only the barest, most basic allegations of illegality," and noted that "reasonable suspicion would arise only if police corroborated the tip with information sufficient to indicate its reliability." *Id.* at *7. This Court concluded that the testimony of Ayala that Furr "was just kind of out of it," "looked like he was under the influence of a drug," and "didn't respond initially" when asked if he was carrying a weapon, was, considered together, "indicative of the anonymous tip's credibility and supported a brief investigatory detention." *Id.* at *6.

In Sirucek's case, the facts supporting a finding of reasonable suspicion regarding both the anonymous woman's tip and the officers' corroboration are just as, if not more apparent than the facts in *Furr I*. In *Furr I*, the anonymous tip was not made face-to-face with the officers. Moreover, the anonymous tip only indicated the location of two white males, a description of their clothing, and that they were using drugs. *Id.* at *1–2. The officer testified that he was unaware whether the anonymous tipster saw an actual drug transaction or if the tipster saw any drugs at all. *Id.* at *2. The corroborating factors leading to a finding of reasonable suspicion were that Furr "was just kind of out of it" and "looked like he was under the influence of drugs," and that the alleged transaction took place in an area known for drug use. *Id.* In Sirucek's case, the anonymous tip was made face-to-face with the officers. In fact, the anonymous woman approached the officers twice with

information relevant to their investigation. The woman stated that an "older man with a beard" sold a specific type of drug to her friend and her friend was, consequently, "tripping." The woman pointed to the exact red Suburban as the vehicle from which the older man with a beard had sold her friend drugs. The officers approached the vehicle and corroborated that Sirucek, a forty-two-year-old man with a beard, was occupying the relevant Suburban. The officers questioned Sirucek's presence at a spring break event, given his age and that he was not in college. And when notified that he was accused of selling drugs from his vehicle, Sirucek paused for an extended period before stating that he did not know what the officers were talking about.[6] While these facts, in isolation, may appear innocent, the test is one of the totality of the circumstances. *See Derichsweiler*, 348 S.W.3d at 914. "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.* Under the totality of these circumstances—including the woman's tip, the officers' corroboration of the tip, and the officers' knowledge and experience—the officers could have rationally and objectively inferred that Sirucek was or had been engaged in criminal activity. *See id.* at 914–15.

The totality of the circumstances in this case supports a finding of reasonable suspicion. *See Matthews*, 431 S.W.3d at 603.

---

[6] "The Supreme Court has consistently held that a person's refusal to cooperate with a police request during a consensual encounter cannot, by itself, provide the basis for a detention or *Terry* frisk." *Wade v. State*, 422 S.W.3d 661, 664–65 (Tex. Crim. App. 2013) (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *Florida v. Royer*, 460 U.S. 491, 498, (1983) (plurality op.)). In this case, that Sirucek did not respond to the officers' question promptly is but one of the several circumstances that, taken together, support a finding of reasonable suspicion.

13

**2.      Sirucek's detention while awaiting the arrival of K9 Riggs was lawful**

While reasonable suspicion may allow an officer to temporarily detain an individual, as noted above, that detention may last no longer than is necessary to effectuate the purpose of the stop. *Rodriguez*, 575 U.S. at 354; *Royer*, 460 U.S. at 500. In this case, citing *Rodriguez*, the trial court raised concerns that Sirucek's detention was unreasonably prolonged after his warrant check came back clear. *See Rodriguez*, 575 U.S. at 348. However, *Rodriguez* is distinguishable in at least one important respect: the purpose of the initial stop.

In *Rodriguez*, Officer Struble pulled Rodriguez over for driving on the highway shoulder in violation of Nebraska law. *Id.* at 351. Officer Struble approached the vehicle and informed Rodriguez and his passenger, Pollman, of the reason he had pulled them over. *Id.* Officer Struble took Rodriguez's identification and ran a warrant check. *Id.* After determining that Rodriguez had no outstanding warrants, Officer Struble returned to Rodriguez's vehicle, asked for Pollman's identification, and asked Pollman where the two were coming from and where they were going. *Id.* Officer Struble went back to his patrol car to run a warrant check on Pollman and write a ticket for Rodriguez for driving on the shoulder of the highway. *Id.* at 352. Officer Struble returned to Rodriguez's vehicle, handed back Rodriguez's and Pollman's identification, and issued Rodriguez the ticket. *Id.* While at that point the pair's documents were returned and Rodriguez received his ticket, Officer Struble nonetheless ordered Rodriguez to turn the ignition off and exit the vehicle. *Id.* Approximately seven or eight minutes later, a second police officer arrived with a drug-sniffing dog. *Id.* The dog conducted an open-air sniff test and alerted to the

14

presence of drugs. *Id.* The officers discovered a large bag of methamphetamine during their subsequent search of Rodriguez's vehicle. *Id.* Rodriguez filed a motion to suppress the drugs, which the trial court denied. *Id.* at 353. The Eighth Circuit affirmed the decision. *Id.*

The United States Supreme Court granted certiorari and held that an otherwise-completed traffic stop may not be extended to conduct a K9 search, absent reasonable suspicion. The Court reasoned that, "[a] seizure for a traffic violation justifies a police investigation of that violation." *Id.* at 354. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (citing *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* A drug sniff, by contrast, "is not an ordinary incident of a traffic stop." *Id.* at 356. Because Officer Struble initially stopped Rodriguez for a traffic violation, absent reasonable suspicion for further investigation, only a traffic investigation was reasonable. *Id.* Thus, *Rodriguez* holds that, in the traffic context, absent reasonable suspicion, detention beyond the requisite time to run a warrant check, check an automobile's registration and proof of insurance, and write a ticket is unreasonable. *Id.*

In Sirucek's case, the officers did not conduct a traffic stop. Instead, their investigation was prompted by reasonable suspicion of criminal drug activity. Accordingly, a search for drugs was "reasonably related in scope to the circumstances which justified the interference in the first place." *Matthews*, 431 S.W.3d at 603 (citing *Davis*, 947 S.W.2d

15

at 242). And "[o]ne reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs is to have a trained drug dog perform an 'open air' search by walking around the car." *Id.* In *Matthews*, the court of criminal appeals held that, under facts similar to the facts in this case, a fifteen-to-twenty-five-minute detention while awaiting the arrival of the K9 unit was reasonable. *Id.* at 605–06. In this case, the K9 unit arrived in approximately three minutes. Accordingly, we conclude that Sirucek's detention was reasonable at its inception and in its scope. *See Terry*, 392 U.S. at 19–20.

Having applied the appropriate bifurcated standard of review, we have determined that the facts in this case gave rise to reasonable suspicion to detain Sirucek. *See Wade*, 422 S.W.3d at 669; *Amador*, 221 S.W.3d at 673; *Madden*, 242 S.W.3d at 517; *Miller*, 393 S.W.3d at 263. We therefore hold that the trial court erred by granting Sirucek's motion to suppress evidence.

Accordingly, we sustain the State's first issue on appeal.[7]

### III.    CONCLUSION

We reverse the trial court's order granting Sirucek's motion to suppress evidence and remand to the trial court for further proceedings.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
27th day of January, 2022.

---

[7] As noted, the State also argues in the alternative that "even if [Sirucek's] detention had been illegal, Sirucek failed to show that the detention of his person was causally connected to the open-air search of his parked vehicle." We do not address that argument as we have concluded that Sirucek's detention was lawful. *See* TEX. R. APP. P. 47.1.